Martin CUNNINGHAM, Plaintiff,

v.

Kenneth APFEL, Commissioner of the
Social Security Administration,
Defendant.

Civil Action No. 97–30135–MAP.

United States District Court,
D. Massachusetts.

Sept. 14, 1998.

this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Sandra Susse, W. Mass. Legal Services, Springfield, MA for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA for Defendant.

## ORDER

PONSOR, District Judge.

Upon *de novo* review this Report and Recommendation is hereby adopted. Plaintiff's motion is DENIED, and defendant's ALLOWED. The clerk will enter judgment for defendant. So ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION TO REVERSE (Docket No. 12) and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Docket No. 11)* May 19, 1998

NEIMAN, United States Magistrate Judge.

This matter is before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act") which provides for judicial review of a final decision by the Commissioner of the Social Security Administration regarding an individual's entitlement to disability benefits. Martin Cunningham ("Plaintiff") is seeking to maintain his Social Security Disability Insurance ("SSDI") benefits and moves to reverse the final decision of the Social Security Administration's Appeals Council. The Appeals Council terminated Plaintiff's benefits after reviewing an Administrative Law Judge ("ALJ")'s decision to continue those benefits.

Acknowledging that the Appeals Council has the discretion to overturn the ALJ's decision in certain instances, Plaintiff argues that the Appeals Council committed errors of law and abused that discretion in this case. Accordingly, Plaintiff has moved to reverse the Appeals Council's decision. In response, the Commissioner moves to affirm the decision, maintaining that it is within the Appeals Council's discretion to reverse the ALJ's decision and that the Appeals Council's decision itself was supported by substantial evidence.

The parties' respective motions have been referred to the court for a report and recommendation pursuant to Rule 3 of the Rules of the United States Magistrates for the United States District Court for the District of Massachusetts. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court recommends that Plaintiff's motion be denied and that the Commissioner's motion be allowed.

## I. *DISABILITY STANDARD*

A claimant is entitled to SSDI benefits if he is under a disability prior to the expiration of his insured status. *See* 42 U.S.C. § 423(a), (d); *Torres v. Secretary of Health & Human Servs.*, 845 F.2d 1136, 1138 (1st Cir.1988); *Cruz Rivera v. Secretary of Health & Human Servs.*, 818 F.2d 96, 97 (1st Cir.1986). The Act defines disability, in applicable part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). An individual is considered disabled under the Act:

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146–48, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The Social Security Administration ("Administra-

tion") uses a sequential five-step analysis to determine whether a claimant is disabled. *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982) (citing 20 C.F.R. § 404.1520). *See also McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1120 (1st Cir.1986).

■ Once disability benefits are awarded, the Administration can discontinue those benefits if there is medical improvement sufficient to enable the recipient to engage in substantial gainful activity or if the recipient's "condition is not as serious as was at first supposed." *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir.1975). *See* 20 C.F.R. § 404.1594(a). Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). The regulation continues: "[a] determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.*

In making a determination of continuing eligibility, the Administration must consider all of a recipient's "current impairments, not just the impairments present at the time of the most recent favorable determination." 20 C.F.R. § 404.1594(b)(5). If the Administration cannot make a continuing disability determination based upon medical considerations alone, it will assess the claimant's capacity to do basic work activities, i.e., the ability and aptitude to do most jobs, or his residual functional capacity, i.e., the ability to engage in other types of substantial gainful activity. *See* 20 C.F.R. §§ 404.1594(b)(4)-(5).

A multi-step analysis is used to determine continuing disability. *See* 20 C.F.R. § 404.1594(f)(1)-(8). First, the Administration must consider whether the claimant is engaged in substantial gainful activity. If yes, the Administration will find that the claimant is no longer disabled; if not, the Administration must determine whether the claimant has an impairment that meets or equals a listed impairment. If the claimant has a listed impairment, he or she is deemed to have a continuing disability; if not, a determination must be made as to whether there is medical improvement in the claim-

ant's impairment. If there has been no medical improvement or if the improvement is unrelated to the ability to do work, the claimant is deemed to have a continuing disability. If, however, improvement has occurred which relates to the claimant's ability to work, the Administration must determine whether a claimant's impairment is severe. If not, the claimant is no longer disabled for purposes of the Act. If, however, the existing impairment is severe enough to limit the claimant's ability to work, there is a continuing disability. However, the Administration must still determine whether the claimant can engage in substantial gainful activity. If the claimant can engage in his prior occupation or has the residual functional capacity to perform other types of substantial gainful activity, the Administration must conclude that the disability ceased. If the claimant is unable to engage in substantial gainful activity, the Administration must find that the claimant continues to be eligible for benefits.

## II. *STANDARD OF REVIEW*

■ The Social Security Administration's decision to terminate benefits must be grounded in substantial evidence. *Miranda*, 514 F.2d at 998. Substantial evidence means such relevant evidence as " 'a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). *See also Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). Substantial evidence must amount to " 'more than a mere scintilla.' " *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (quoting *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206). Even if the record could support multiple conclusions, a court must uphold the Commissioner " 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.' " *Ortiz v. Secretary of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (quoting *Rodriguez*, 647 F.2d at 222). *See also Perales*, 402 U.S. at 401, 91 S.Ct. 1420. In essence, a court must affirm the Commissioner's decision so

long as it is supported by substantial evidence, even if the record could arguably justify a different result. *See Rodriguez Pagan v. Secretary of Health & Human Servs.,* 819 F.2d 1, 3 (1st Cir.1987).

### III. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff was born on January 18, 1948. (Administrative Record ("A.R.") at 38.) After completing the ninth grade, Plaintiff worked variously as a maintenance worker, custodian, cleaner, press operator, press helper and forklift operator. (A.R. at 38, 128.) In October of 1990, Plaintiff was diagnosed with Hodgkin's lymphoma and applied for SSDI benefits on November 11, 1990. (A.R. at 56.) On December 11, 1990, the Administration found that Plaintiff's diagnosis satisfied a listed impairment and awarded benefits. (A.R. at 56.)

In December of 1994, both of Plaintiff's treating physicians, in evident response to an inquiry from the Administration, reported that Plaintiff's Hodgkin's disease went into remission as a result of chemotherapy and radiation treatment. (A.R. at 159, 160–67.) According to Dr. Gary Reiter, Plaintiff's primary care physician, his Hodgkin's disease had stabilized. Dr. Reiter noted that Plaintiff nonetheless had some mental health problems, exhibiting both depression and alcohol abuse during his cancer treatment. (A.R. at 159.) Dr. Reiter concluded that "between the treatment of the cancer, the depression and the history of substance abuse, he is mental [sic] incapable of working." (Id.) "I have pushed him to get jobs, even menial jobs," Dr. Reiter stated, "and he just can't effect that. I don't think he will ever be able to work." (Id.)

Like Dr. Reiter, Dr. Robert Byrne, Plaintiff's treating oncologist, reported in December of 1994, that Plaintiff's cancer was "cured." (A.R. at 160–61.) Dr. Byrne did not believe that Plaintiff was "medically disabled at this time on the basis of cancer." (A.R. at 161.) With respect to Plaintiff's report that he was experiencing chest pain, (A.R. at 160–70), Dr. Byrne opined that, if the pain was due to cancer, it was a result of residual scarring from the mediastinal lymph nodes. (A.R. at 160–61.) A pulmonary screening test, performed on January 6, 1995, revealed a mild restrictive ventilatory defect but found no airflow obstruction. (A.R. at 162.) Dr. Byrne also observed that Plaintiff was able to stand, walk, lift and carry objects. (A.R. at 161.) Although he reported that Plaintiff had shown "some obsessive qualities of psychiatric disease" and that Plaintiff had "some obsessive qualities about the pain in his chest," Dr. Byrne deferred to Plaintiff's primary care physician for a detailed evaluation. (A.R. at 160–61.)

On January 6, 1995, Plaintiff was assessed by Dr. Edward W. Hughes, a consultative psychiatrist, at the request of the Administration. (A.R. at 168–71.) Plaintiff reported to Dr. Hughes that he was concerned that he had received an overdose of radiation treatment which scarred his lung tissue. Plaintiff reported as well that he experienced trouble breathing, shortness of breath, sharp pains in his chest and faintness which had, on occasion, caused him to drop to his knees. Dr. Hughes found that Plaintiff has normal cognition and social interaction and that he was free of anxiety, depression, thought disorder, perceptual defects, psychosis or central nervous system organicity. However, Dr. Hughes diagnosed Plaintiff as having an undifferentiated respiratory disorder and high blood pressure. (Id.)

As a result of these reports, the Administration's Disability Determination Services Unit ("DDS") determined that as of January 19, 1995, Plaintiff was no longer disabled. (A.R. at 57.) Plaintiff was so notified on February 1, 1995. The Administration explained that his benefits were to be terminated as of April, 1995, (A.R. at 78), the DDS having found that Plaintiff's Hodgkin's disease was in remission and that, although he still had "some problems with [his] day to day activities[,] ... overall medical activities show that [he] would be able to return to [his] past work as a maintenance worker." (A.R. at 58.)

During subsequent follow-up visits, Plaintiff's treating physicians continued to report that Plaintiff's cancer was in remission. (A.R. at 172–74.) Dr. Reiter saw Plaintiff on January 23, 1995, and noted that he did not

report any chest pain or shortness of breath. (A.R. at 172.) Dr. Byrne met with Plaintiff on February 2, 1995, and again reported that his cancer was in remission, that Plaintiff could sit, stand, walk, lift, carry, handle objects, hear, speak and travel. (A.R. at 173–74.) However, Dr. Byrne noted that Plaintiff continued to have chronic chest pain and "a high degree of anxiety about the chest pain." (Id.) Dr. Byrne considered the possibility of an anxiety disorder, although he did not think that he was "impaired in his ability to perform work-related activities." (A.R. at 174.) On April 25, 1995, Dr. Byrne again saw Plaintiff and reported that he continued to complain of chest pain. (A.R. at 176.) Similarly, during a July 7, 1995 visit, Dr. Reiter reported that Plaintiff complained of shortness of breath and difficulty breathing. (A.R. at 186.)

On July 10, 1995, after consideration of the additional documentation, the Administration affirmed the earlier decision to terminate benefits. (A.R. at 111–13.)

On August 15, 1995, Dr. Reiter noted that Plaintiff continued to have shortness of breath, although he was not experiencing any chest pain. (A.R. at 180.) Dr. Reiter also noted that evidence of a mild pulmonary fibrosis did not offer an adequate explanation for Plaintiff's symptoms. (Id.) Finding that Plaintiff was depressed, Dr. Reiter prescribed Paxil. (Id.) When Plaintiff saw Dr. Reiter for treatment of his depression on September 8, 1995, the doctor again prescribed Paxil. (A.R. at 179.) Shortly afterwards, during a September 12, 1995 visit with Dr. Byrne, Plaintiff reported that his chest pain remained unchanged.

Both Drs. Reiter and Byrne referred Plaintiff to Dr. Newton Bowdan, a psychiatrist, for evaluation. On September 14, 1995, Dr. Bowdan reported that Plaintiff's complaints included nausea, cramping, shortness of breath and chest pain, (A.R. at 195–98.), but was unable to determine whether these physical symptoms were secondary to Plaintiff's mental health problem or vice versa. (A.R. at 197.) Instead of offering a diagnosis, Dr. Bowdan ordered psychological testing for possible depression. (A.R. at 197.)

On September 20, 1995, Plaintiff was assessed by Dr. Martin Markey, a clinical psychologist. (A.R. at 192.) Plaintiff reported feeling shortness of breath. (A.R. at 193.) Test results indicated that Plaintiff had a pattern of chronic psychological maladjustment. (A.R. at 192–93.) Dr. Markey characterized Plaintiff's somatic complaints as demonstrating paranoia and hypochondriasis. (Id.) He also opined that Plaintiff's psychological issues could potentially interfere with any occupational program. (A.R. at 193.)

On October 12, 1995, Dr. Bowdan noted that the psychological tests administered to Plaintiff indicated that he was "very anxious" and that he "has a high hysteria and moderately high hypochondriasis level, and a somewhat lower depression level." (A.R. at 191.) Plaintiff was also found to have "a slight elevation on schizoid symptoms." (Id.) Dr. Bowdan then offered the following:

My interpretation of this is not that he is psychotic at all, and not that he is hypochondriac or hysteric, but that he has real symptoms and he is worried about them and obsesses about them somewhat.

(Id.) These "real symptoms," evidently, were "some fibrosis in his lung." Dr. Bowdan continued: "[Plaintiff] may imagine, or believe or fear, that they are related to a recurrence of the Hodgkin's, but I don't think that this is particularly abnormal." (Id.) Plaintiff was prescribed Ativan at that time. (A.R. at 191.)

One month later, on November 9, 1995, Dr. Bowdan observed increasing levels of hysteria and hypochondriasis in Plaintiff, accompanied by a somewhat lower depression level. (A.R. at 190.) Plaintiff also reported various throat, chest and head pains. (Id.) Hearing that Plaintiff was unhappy with his Ativan, Dr. Bowdan prescribed both Pamelor and Nortriptyline. (Id.)

After an administrative hearing on April 12, 1996, at which Plaintiff testified, the ALJ found that the Plaintiff was no longer disabled from cancer. (A.R. at 13–24.) However, the ALJ also found that Plaintiff's disabled status continued on the basis of a severe mental impairment. (Id.) Citing 20 C.F.R. § 404.1545, the ALJ determined that Plaintiff was

moderately limited in his ability to interact appropriately with the general public and to work in coordination and get along with coworkers, markedly limited in his ability to respond appropriately to criticism from supervisors, moderately limited in his ability to perform at a consistent pace and to cope with ordinary work stress, and markedly limited in his ability to cope with more than ordinary work stress, and moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(A.R. at 20.)

Upon its own motion, the Appeals Council decided to review the ALJ's decision and so notified Plaintiff on September 3, 1996. (A.R. at 11.) On April 14, 1997, after receiving a written response from Plaintiff, (A.R. at 212–13), the Appeals Council reversed the ALJ's findings and concluded that Plaintiff was no longer disabled. (A.R. at 4–10.) The Appeals Council found that "[t]he record in this case fails to establish the presence of any impairment capable of producing pain to the degree alleged by the claimant or of reducing his residual functional capacity to only sedentary work." (A.R. at 7.) In addition, the Appeals Council concluded that the record failed "to establish the existence of a severe respiratory impairment." (Id.)

With respect to Plaintiff's claimed mental impairment, the Appeals Council found the record devoid of evidence which indicated that Plaintiff was precluded from performing his previous work-related activities. (A.R. at 8.) Since Plaintiff's past relevant work as a custodian "requires no immediate response to instructions or orders, involves little or no latitude for judgment with regard to attainment of standards and requires little or no contact with the public," the Appeals Council determined that Plaintiff's past relevant work "would not expose him to undue stress or require performance at a consistent pace." (Id.) Accordingly, the Appeals Council concluded that Plaintiff was no longer eligible for SSDI benefits.

## IV.  DISCUSSION

Plaintiff argues that the Appeals Council failed to give proper deference to the ALJ's conclusion that he had a continuing disability, a finding which, Plaintiff asserts, was based on substantial evidence. In response, the Commissioner maintains that the Appeals Council had discretion to review the ALJ's decision upon its own motion and that its decision to terminate Plaintiff's SSDI benefits was supported by substantial evidence.

### A.

Plaintiff concedes that the Appeals Council has the discretion to reverse an administrative law judge's findings. He argues, however, that the Appeals Council's authority to review those findings is limited by regulation to circumstances when

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest.

20 C.F.R. § 404.970(a). Plaintiff maintains that the Appeals Council violated this regulation when it initiated review. He asserts that subparagraphs 1, 2 and 4 are wholly inapplicable and, with regard to subparagraph 3, that the ALJ's decision is supported by substantial evidence. "Just as before a court," Plaintiff maintains, "an ALJ's supportable findings should be conclusive when reviewed by the Appeals Council." (Pl. Mem. (Docket No. 13) at 14.)

■ The First Circuit has "explicitly rejected" the very argument which Plaintiff now pursues. *Berrios v. Secretary of Health & Human Servs.*, 796 F.2d 574, 575 (1st Cir.1986). As the First Circuit explains, the four categories enumerated in 20 C.F.R. § 404.970(a) are not an exhaustive list of times when the Appeals Council may initiate a review of an administrative law judge's decision. *Lopez–Cardona v. Secretary of Health & Human Servs.*, 747 F.2d 1081, 1082 (1st Cir.1984). The fact that the Appeals

Council "will" review a case in the four instances cited in § 404.970(a) does not limit its discretionary power to initiate review under other circumstances. *See* 20 C.F.R. § 404.969 (after an administrative hearing, the Appeals Council "may decide to review the action that was taken"). Its power to initiate review of "issues that are ripe for appeal immediately, such as errors of law and disputes over the substantiality of the evidence," is limited only by a sixty-day time period following the issuance of the administrative law judge's decision. *McCuin v. Secretary of Health & Human Servs.*, 817 F.2d 161, 171 (1st Cir.1987). In the present matter, there is no dispute that the Appeals Council's decision to commence its review fell within the requisite sixty-day period.

### B.

■ Plaintiff contends that the Appeals Council cannot make credibility determinations contrary to those made by an administrative law judge without an express explanation of its reasoning. The Appeals Council not only failed to expressly assess the ALJ's credibility findings, Plaintiff argues, but it lacked as well an adequate basis for its independent decision to discount his credibility.

■ It is true that the Appeals Council must give deference to an administrative law judge's credibility determination. *See Frustaglia v. Secretary of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir.1987) (citing *DaRosa v. Secretary of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir.1986)). As the fact finder, an administrative law judge has the opportunity to "observe the claimant, evaluate his demeanor, and .[consider] how that testimony fit[s] in with the rest of the evidence." *Frustaglia,* 829 F.2d at 195. However, as the First Circuit made clear in *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622 (1st Cir.1989), a decision cited by Plaintiff, it is well within the Appeals Council's discretion to ignore an administrative law judge's credibility findings when there is no objective medical evidence upon which those findings are based. In such instances, the Appeals Council "is in the same position as the ALJ to evaluate objec-

tive medical evidence and it need not defer to the ALJ's interpretation." *Id.* at 623–24.

As in *Dupuis,* the Appeals Council in the present matter was not required to expressly reject the ALJ's credibility determination. The record indicates that Plaintiff's complaints of chronic chest and respiratory pain were not supported by any of his doctor's medical findings. Indeed, while the ALJ may have considered the opinions of the treating physicians and psychiatrists and found Plaintiff's testimony credible, (A.R. at 18), the ALJ herself recognized that there was "no objective medical evidence of record to support the claimant's alleged severity of pain." (A.R. at 18.) Similarly, after describing the observations of Plaintiff's treating physicians, the Appeals Council determined that "[t]he record contains no objective medical evidence to support the claimant's alleged severity of pain or that the claimant was prescribed strong anti-pain medication." (A.R. at 7.) With no objective evidence of record to support the ALJ's findings, the Appeals Council was in the same position as the ALJ to review the entire record—including medical evidence, psychological reports, physical assessments and complaints of disabling pain—in order to determine continuing disability.

Plaintiff's claims to the contrary, the court also believes that the Appeals Council adequately explained its reasons for rejecting the ALJ's credibility decision. In its five page decision the Appeals Council explained that Dr. Byrne, Plaintiff's treating physician, did not impose any functional limitations on Plaintiff's ability to engage in work-related physical activities. The Appeals Council also pointed out that, despite Plaintiff's complaints of chest pains and shortness of breath, pulmonary function studies showed only mild restriction and accompanying chest x-rays showed Plaintiff's lungs to be clear. As a result, the Appeals Council concluded that the record contained "no objective medical evidence to support the claimant's alleged severity of pain." (A.R. at 7.) The Appeals Council's review of Plaintiff's claimed mental impairment is even more detailed.

Accordingly, Plaintiff's reliance on two additional decisions is unavailing. In *Patterson*

*v. Secretary of Health & Human Servs.*, No. 84–3176–Y, slip op. at 1 (D. Mass. June 6, 1986), for example, the court confirmed that the Appeals Council's discretion to reject an administrative law judge's finding of credibility may be influenced by the absence of objective medical evidence supporting a claimant's subjective complaints of pain. Similarly, in *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir.1977), the court found the Appeals Council's explanation of its decision to reject an administrative law judge's favorable decision was inadequate only because the Appeals Council was faced with objective medical evidence consistent with the claimant's complaints of disabling pain. Little if any such evidence was presented to the Appeals Council in the case at bar.

### C.

The only remaining question is whether the Appeals Council's decision to terminate Plaintiff's disability benefits was itself based on substantial evidence. The court finds that it was.

In determining whether the Plaintiff had a continuing disability, the Appeals Council looked at whether Plaintiff demonstrated any medical improvement that related to his ability to work. The Appeals Council concluded, without any contradiction, that Plaintiff no longer had a disabling condition on the basis of Hodgkin's lymphoma. In reaching that conclusion, the Appeals Council relied on the December 12, 1994 and March 13, 1995 reports of Dr. Byrne, Plaintiff's treating oncologist, both of which indicated that Plaintiff's cancer was no longer disabling. In addition, after evaluating Plaintiff's ability to work, Dr. Byrne did not perceive any functional limitations. Rather, he found the Plaintiff "was able to do work-related physical activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing speaking and traveling without impairment." (A.R. at 7.)

As was its responsibility, the Appeals Council also considered whether Plaintiff was disabled by other medical conditions, namely, his pain or his mental state. First, the Appeals Council found that "[t]he record in this case fails to establish the presence of any impairment capable of producing pain to the degree alleged by the claimant or of reducing his residual functional capacity to only sedentary work." (Id.) Even though Dr. Reiter diagnosed a mild pulmonary fibrosis, the Appeals Council noted that there were no signs of any significant abnormality. "The record contains no objective medical evidence to support the claimant's alleged severity of pain or that the claimant was prescribed strong anti-pain medication." (Id.) As a result, the Appeals Council found from the record that Plaintiff's medical improvement was significant enough to allow him to perform light work similar to his past relevant work as a custodian and maintenance worker.

Second, the Appeals Council found that Plaintiff's mental impairments were not significant enough to be disabling for purposes of the Act. In particular, the Appeals Council cited Dr. Bowdan's reports of January 6 and October 12, 1995. Those reports indicated that Plaintiff had exhibited some anxiety with high hysteria, moderately high hypochondriasis and a slight elevation of schizoid symptoms. However, Dr. Bowdan opined that, despite these symptoms, Plaintiff was only moderately limited in his ability to cope with ordinary work stress or to perform at a consistent pace. Accordingly, the Appeals Council found that Plaintiff's mental impairments did not prevent him from performing such mentally-related activities as were required by his past relevant work. (A.R. at 8.)

Finally, in evaluating Plaintiff's current ability to work, the Appeals Council looked to the listing of occupational titles. Based upon Dr. Bowdan's observations of Plaintiff's capacity to perform work-related activities, the Appeals Council concluded that he was capable of performing his past relevant work as both a custodian and maintenance cleaner and, therefore, was no longer disabled. In sum, it is clear the Appeals Council's decision that Plaintiff was no longer suffering from a disabling condition was based on substantial evidence.

### V. CONCLUSION

For the foregoing reasons, the court recommends that Plaintiff's motion to reverse

the Commissioner's decision be DENIED and that the Commissioner's motion to affirm be ALLOWED.[1]

1. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.