Martin v. SSA                         CV-97-405-JD  10/28/98
              UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Lee R. Martin

     v.                              Civil No. 97-405-JD

Kenneth S. Apfel, Commissioner
Social Security Administration


                         O R D E R


     Plaintiff, Lee R. Martin, brings this action pursuant to 42

U.S.C.A. § 405(g) seeking judicial review of a final decision by

the Commissioner of the Social Security Administration denying

his application for disability benefits.  Plaintiff contends that

the Appeals Council, in reversing the Administrative Law Judge's

("ALJ") decision in plaintiff's favor, erred by failing to defer

to the ALJ's credibility determinations.  For the following

reasons, the Commissioner's decision is affirmed.


                        Background[1]

     Plaintiff was born in 1948, making him thirty-seven years

old at the onset of impairment.  He has a high school education

and nearly completed an associate's degree in accounting.  He

worked as a tester in the electronics industry from 1974 - 1980,

---

     [1]The background facts are taken from the parties' joint
statement of material facts and the record.

an owner/operator of a janitorial service from 1980 - 1985, and in a college library in 1987 and 1988. His last insured date for disability benefits was September 30, 1988.

Plaintiff first applied for benefits in 1986, when he lived in California, alleging a disability caused by shoulder and back impairments. His hearing request was logged in December 1986, but was later dismissed for unspecified reasons, and his file was transferred from San Bernardino, California, to Boston, Massachusetts. Although plaintiff periodically inquired about the status of his application until 1990, he was never notified about the disposition of his case. In 1990, SSA advised plaintiff to file a new application.

Plaintiff filed new applications for disability and supplemental security income benefits on May 24, 1993, alleging an inability to work since January 1, 1986, due to chronic obstruction and cancer of the throat, arthritis in the back, shoulder and hips, and heart failure. Plaintiff was found disabled for supplemental security income benefits as of January 1994, but his application for disability benefits was denied, and he requested a hearing.

A hearing was held on October 4, 1995. Plaintiff attended with his daughter but was not represented by counsel. The ALJ suggested that plaintiff seek representation and also submit

2

additional medical evidence. The second hearing was held on February 13, 1996. Plaintiff, represented by counsel and accompanied by his wife and daughter, testified about his impairments, his activities, and his medical treatment between 1986 and 1988. He also submitted medical records covering his treatment beginning in 1986 and continuing through August 1995.

In February 1986, plaintiff saw Russell Davignon, M.D., for orthopedic complaints. Plaintiff explained that his problems began after physiotherapy while he was in the Navy and that he was being evaluated by Navy physicians, but he wanted reassurance that he was being treated fairly by the Veterans Administration. Dr. Davignon found that plaintiff's right dominant shoulder had a full range of motion but that when plaintiff raised his left shoulder to ninety degrees, he became nervous that the shoulder would pop or snap. Plaintiff also complained of tenderness over the right elbow. Dr. Davignon diagnosed chronic lateral (right) epicondylitis (inflammation of the elbow), inflammation of a tendon in the rotator cuff with possible bicep tendinitis and painful arc syndrome, and probably a catching of the rotator cuff tear causing the popping or snapping in the shoulder.

Plaintiff was examined in July of 1986 by Chris Jordan, M.D. for shoulder symptoms, neck pain, headaches, and subjective symptoms of numbness in the fingertips related to his activities.

3

After flex measurements and neurological examination, Dr. Jordan's impression was left shoulder pain with possible rotator cuff impingement syndrome or rotator cuff tear. He planned to treat plaintiff with anti-inflammatory medication by increasing plaintiff's Motrin dose. Before he would consider surgery, Dr. Jordan recommended that plaintiff undergo a psychological evaluation to determine how much his symptoms were amplified by anger toward the Navy and pending litigation. On forms plaintiff submitted for disability and welfare benefits, Dr. Jordan indicated that plaintiff was employable as long as the job did not require use of the left hand or overhead work or vigorous activities.

In August 1986, plaintiff was evaluated by Harold Kutzman, M.D., an orthopedist, for the California DDS. Plaintiff's chief complaint was a sore right elbow. Dr. Kutzman measured his range of motion in both elbows and shoulders and had x-rays of the left shoulder and right elbow. He diagnosed rotator cuff tear in the left shoulder and epicondylitis in the right elbow and recommended physiotherapy and anti-inflammatory medication. Dr. Katzman stated that plaintiff was able to work in a job with no overhead lifting or repetitive overhead arm use, and a weight limit due to the shoulder problem.

Plaintiff treated with orthopedist George Hutchful, M.D.,

from September through November of 1986 for right elbow and left shoulder pain.  Dr. Hutchful found a full range of motion in both elbows with tenderness over the right elbow.  X-rays of both shoulders were within normal limits.  In November, Dr. Hutchful diagnosed bicipital tendinitis, possible rotator cuff syndrome in his left shoulder, and right epicondylitis.  He recommended Motrin and daily shoulder exercises and that plaintiff wear a right elbow brace, and treated plaintiff's pain symptoms with a steroid injection.  Dr. Hutchful referred him to the Lorma Linda Medical Center for further treatment.

On November 10, 1986, Dr. Subbiah, a general practitioner, completed a general medical examination form for the California Department of Rehabilitation.  Dr. Subbiah noted that activities requiring balancing, climbing, reaching, and lifting or carrying over twenty-five pounds during a work day were contraindicated.  In December, following Dr. Subbiah's report, plaintiff was found eligible for rehabilitation and thereafter attended four semesters at Riverside Community College.  While attending college, plaintiff worked in the college library stamping books.  Plaintiff left the college program before completing his degree because he was having migraine headaches, which he believed were caused by using his left arm.

On February 5, 1988, Dr. Subbiah found plaintiff was

temporarily incapacitated from his regular work for one year due to his left shoulder and right elbow.  The remainder of the medical evidence in the record pertains to plaintiff's treatment and condition after 1990, which is beyond his covered period.  As plaintiff does not offer the later medical records as retrospective diagnoses for purposes of establishing his disability during the covered period, the remaining medical records will not be considered.  See, e.g., Marcotte v. Callahan, 992 F. Supp. 485, 491 (D.N.H. 1997).

Based on the hearing testimony and the record submitted for review, the ALJ determined that plaintiff was disabled and entitled to benefits since January 1, 1986.[2]  In support of his conclusion, the ALJ found that during the covered period, plaintiff had severe epicondylitis of the right elbow and a history of rotator cuff injury of the left shoulder.  The ALJ concluded that plaintiff had "the residual functional capacity to

_____

[2]The ALJ implicitly reopened plaintiff's application, and the Appeals Council did not review that aspect of the ALJ's decision.  Nevertheless, plaintiff raises a question pertaining to an ALJ's duty to assist an unrepresented claimant referring to a lack of development of the record in plaintiff's 1986 application.  Plaintiff's present application was not barred by the previous disposition of his application, when he was not represented, and he was represented by counsel for purposes of the present application.  Plaintiff has not demonstrated any prejudice in this case arising from a lack of record development in the prior application.  Accordingly, an ALJ's duty to develop the record has no bearing on this case.

6

perform the physical exertional and nonexertional requirements of work except for lifting over twenty pounds occasionally and ten pounds frequently, tasks requiring pushing and pulling with his arms, overhead reaching and manual dexterity tasks and tasks requiring attention and concentration." The ALJ also found that plaintiff's "pain credibly interfered with his ability to attend to and concentrate on job tasks at all times since January 1, 1986" so that his "residual functional capacity for the full range of light work is reduced by his pain." He concluded that plaintiff would not be able "to make a vocational adjustment to work which exists in significant numbers in the national economy," and that he had been under a disability since January 1, 1986.

On its own motion, the Appeals Council decided to review the ALJ's determination and so notified plaintiff. Plaintiff's counsel submitted arguments and additional evidence in support of plaintiff's application and the ALJ's favorable determination. After a review of the entire record, the Appeals Council held that the evidence did not support the ALJ's finding that plaintiff's "alleged pain credibly interfered with his ability to attend to and concentrate on job tasks at all times since January 1, 1986." Instead, the Appeals Council found that plaintiff retained the capacity during the covered period for at least

7

light work activity that did not require overhead reaching.  The
Appeals Council's decision, denying benefits, became the final
decision of the Commissioner, and plaintiff filed his appeal in
this court.


## Discussion

The court must uphold a final decision of the Commissioner
denying benefits unless the decision is based on legal or factual
error.  Manso-Pizarro v. Secretary of Health and Human Servs., 76
F.3d 15, 16 (1st cir. 1996) (citing Sullivan v. Hudson, 490 U.S.
877, 885 (1989)).  The Commissioner's factual findings are
conclusive if based on substantial evidence in the record.  42
U.S.C.A. § 405(g) (West Supp. 1998).  Substantial evidence is
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  Richardson v. Perales, 402
U.S. 389, 401 (1971) (quotation omitted).


## A.   The Decision of the Commissioner

When, as here, the Appeals Council reverses the decision of
the ALJ, the Appeals Council's decision is the final decision of
the Commissioner for review under section 405(g).  20 C.F.R. §
404.981 (1996); see also White v. Sullivan, 965 F.2d 133, 136
(7th Cir. 1992).  The ALJ's factual findings are not binding on

8

the Appeals Council although "considerable deference is owed to a credibility finding by the ALJ." Dupuis v. Secretary of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989). If the Appeals Council rejects the ALJ's credibility findings, it should make express findings with supporting reasons to permit review. Bauzo v. Bowen, 803 F.2d 917, 922 (7th Cir. 1986). When a credibility determination is largely based on written records, however, the ALJ does not have an appreciably better position to judge than the Appeals Council. See id.; Burgos Lopez v. Secretary of Health and Human Servs., 747 F.2d 37, 40 (1st Cir. 1984); Cunningham v. Apfel, No. 97-30135, 1998 WL 641202 at *7 (D. Mass. Sept. 14, 1998).

The Appeals Council essentially agreed with the ALJ's determination of plaintiff's exertional limitations and residual functional capacity. Both the ALJ and the Appeals Council found that plaintiff's exertional capacities would allow him to perform a wide range of light work.[3] See 20 C.F.R. § 404.1567(b) (1996). They differed with respect to the credibility of plaintiff's subjective complaints of pain and its effect on his work

_____

[3]Although the ALJ found restrictions, in addition to overhead reaching, for tasks requiring pushing and pulling with the arms and manual dexterity, those restrictions did not affect the ALJ's determination that based on plaintiff's "exertional capacity for light work, Rules 202.20 and 202.21, Table No. 2, Appendix 2, Subpart P ["the Grid"], Regulations No. 4 would direct a conclusion of 'not disabled.'"

9

capabilities. While the ALJ found that plaintiff's capacity for work was significantly impaired by nonexertional limitations of pain restricting his ability to do tasks requiring attention and concentration, the Appeals Council found plaintiff's complaints of pain credible only to the extent of limiting his ability to do overhead reaching.

If the ALJ had been assessing the effects of pain as he observed plaintiff testify, his determinations would have been due greater deference. Instead, the ALJ's credibility determination turned on his assessment of plaintiff's testimony about his impairments that existed eight to ten years before the hearing, evaluated in light of the medical evidence in the record. Plaintiff had difficulty remembering his physical condition, medical treatment, and activities during the relevant time. In some instances, plaintiff's medical records contradict his memory. For example, for the period in question, plaintiff describes severe migraine headaches lasting for hours that caused him to stop his college program. Plaintiff's medical records, however, indicate only minor complaints and treatment for headaches during that time, and records are unclear as to when he stopped classes. One medical record indicates that he was still attending classes in 1991 and then intended to transfer to the

10

University of California at Pomona.

In this case, the record, including the cassette recording of the hearing, offered the Appeals Council very nearly the same opportunity to assess plaintiff's credibility so that the ALJ's credibility determinations are not entitled to particular deference. See Dupuis, 869 F.2d at 823-24. The court reviews the record to determine whether substantial evidence exists to support the Appeals Council's decision to deny benefits.


B. Assessment of Plaintiff's Allegations of Pain

The Appeals Council did not find plaintiff's allegations of pain credible, except as to limitations on overhead reaching, and rejected the ALJ's finding that plaintiff's pain significantly reduced his ability to perform jobs at a light exertional level. "[C]omplaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis, 869 F.2d at 623. If a plaintiff has a physical condition that may reasonably be expected to cause pain, his subjective complaints of pain and limitations on his ability to work are assessed in light of his medical records and other evidence of his symptoms such as the type of pain, precipitating and aggravating factors, effects of medications, and effects of other treatments and systems for relief of symptoms. 20 C.F.R.

11

§ 404.1529(c)(3) (1996); see also Avery v. Secretary of Health and Human Servs., 797 F.2d 19, 21 (1st Cir. 1986).

The Appeals Council found that plaintiff's orthopedic examinations in 1986 noted pain attributable to a rotator cuff tear in the left shoulder and right tennis elbow. The Appeals Council noted that plaintiff's medical records at that time described the pain as improved or resolved by injections and use of a brace and that plaintiff's doctor recommended exercise to improve the range of motion in his left shoulder. The Appeals Council also noted that even five years after his last insured date, medical reports did not show any impairment in plaintiff's ability to carry or handle objects. The Council discounted the conclusion stated in a form completed for the California Department of Welfare in January 1988 that plaintiff was temporarily disabled due to shoulder and elbow pain because no clinical findings were included to support the determination. As a result, the Appeals Council found no record evidence to support plaintiff's complaints of severe and disabling pain.

The Appeals Council also rejected the ALJ's finding that pain impaired plaintiff's ability to attend to and concentrate on job tasks during the relevant period. The Appeals Council noted plaintiff testified that he is right handed and that his left shoulder pain depended on how often he used the arm. Also,

12

plaintiff testified that during the period in question he attended community college with a work-study job at the college library using his right hand to stamp books. He continued his work-study job for several semesters. Those activities, the Appeals Council found, detracted from a finding that plaintiff was unable to attend to or concentrate on work tasks during the same period.

Other evidence in the record supports the Appeals Council's assessment of the credibility of plaintiff's allegations of severe pain. During the period in question, plaintiff's treating doctors prescribed Motrin and Indocin to reduce inflammation and nothing more than Motrin or Tylenol to treat plaintiff's complaints of pain. Although plaintiff at times complained of stomach upset due to Motrin, at other times he indicated that Motrin was preferable to other prescribed anti-inflammatory medications. Steroid injections caused temporary relief of symptoms. Upon examination, the doctors generally found a full range of motion in both elbows and the right shoulder and noted only "tenderness" in examination of both the elbow and left shoulder. He was encouraged to use a brace for his elbow, which he had but apparently did not wear. No treatment records were submitted for the period between December of 1986 and June of 1988, and unexplained gaps in the medical record may be evidence

13

that plaintiff was not experiencing symptoms needing treatment.
See Irlanda Ortiz v. Secretary of Health and Human Servs., 955
F.2d 765, 769 (1st Cir. 1991).

In summary, record evidence demonstrates that while
plaintiff experienced discomfort and pain associated with his
shoulder and elbow, neither was so painful as to substantially
interfere with his ability to concentrate or attend to work
tasks.  Accordingly, substantial evidence in the record supports
the Appeals Councils' assessment of the credibility of
plaintiff's allegations of pain.

C.  Evidence of Capacity for Work

Both the ALJ and the Appeals Council found plaintiff capable
of a wide range of light work, although the ALJ but not the
Appeals Council, found plaintiff's capacity significantly limited
by his nonexertional impairments due to pain.  Substantial
evidence in the record supports the finding that plaintiff was
capable of performing a wide range of light work.[4]

In July of 1986, Dr. Jordan found plaintiff was employable

---

[4]"Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to
10 pounds."  20 C.F.R. § 404.1568(b).  In addition, a job may
require "a good deal of walking or standing, or [if] it involves
sitting most of the time [it will require] some pushing and
pulling of arm or leg controls."  Id.

14

as long as the job did not require use of the left hand, overhead work, or vigorous activity. Dr. Katzman stated in August of 1986 that plaintiff was able to work if rehabilitated for a job that did not require overhead lifting, repetitive overhead arm use, or exceed an unspecified weight limit. Dr. Subbiah's report in November of 1986 noted that his disability was "resolving" and restricted his work activity to avoid balancing, climbing and reaching, lifting or carrying more than twenty-five pounds, and working in high places.

The medical reports submitted to the California Health and Welfare Agency for plaintiff's Aid to Families with Dependent Children benefits indicate temporary disability based on plaintiff's inability to do his usual work as a janitor and supported plaintiff's eligibility for rehabilitation for other work. As the Appeals Council noted, during 1987 and 1988 plaintiff attended classes toward a degree in accounting and worked at the college library on a work-study program, which is inconsistent with a finding of total disability during the same period. A doctor's determination of disability is not binding on the Commissioner. 20 C.F.R. § 404.1527(e) (1996). In addition, the AFDC form dated January 29, 1987, finding a temporary disability for one year, was not supported by contemporaneous medical records or treatment notes or with any detailed comments

15

or explanation, making it entitled to less weight than if it had been properly supported.  See 20 C.F.R. § 404.1527(d)(3) (1996).

The Appeals Council's determination that plaintiff was capable of a wide range of light work without the nonexertional limitations identified by the ALJ is supported by substantial evidence in the record.  The Appeals Council used the Grid, 20 C.F.R. Subpart P, Appendix 2, Rules 202.20 and 202.21, to determine that jobs existed that plaintiff could do, resulting in a determination of "not disabled."  Because the Grid is an appropriate shortcut for determining the availability of jobs a claimant can perform, as long as a nonexertional impairment does not significantly affect the claimant's range of work ability, the Appeals Council's decision is supported by substantial evidence.  See Ortiz v. Secretary of Health and Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).

### Conclusion

For the foregoing reasons, the decision of the Commissioner is affirmed.  Plaintiff's motion to reverse (document no. 7) is denied, and the government's motion to affirm (document no. 10)

16

is granted.  The clerk of court is directed to enter judgment accordingly and to close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

October 28, 1998

cc:  Raymond J. Kelly, Esquire
     David L. Broderick, Esquire